## CHARLESTON.

ALFRED D. TOMLINSON *v.* S. M. CUNNINGHAM, JAILOR, *et als.*

(No. 6331)

Submitted September 5, 1928.  Decided September 11, 1928.

**2**

*Jay T. McCamic* and *McCamic* and *Clarke*, for petitioner.

WOODS, JUDGE:

Upon complaint before W. E. Clayton, justice of the peace of Marshall county, Mrs. Ella Tomlinson, pursuant to section 16c (2), Chapter 144, West Virginia Cumulative Statutes, procured a warrant for the arrest of her husband, Alfred D. Tomlinson, charging that he did wilfully neglect and refuse to provide for the support and maintenance of his two children, both under the age of 16 years, in destitute and necessitous circumstances. At the hearing Tomlinson moved to quash the warrant and complaint, which motion was overruled. Evidence was then taken on behalf of complainant. Tomlinson offered no evidence. The justice found him guilty as charged, and in lieu of the penalty prescribed in section 16c (1) the justice, by virtue of section 16c (3), pronounced judgment that Tomlinson do pay $25.00 per month for the support of his two minor children, and that he give a bond in the sum of $500.00, conditioned to make the payments as aforesaid. Upon default in furnishing the required bond, Tomlinson was committed to jail, and it is from this commitment that the present writ of habeas corpus issued.

The petitioner bases his right to the writ solely on the alleged unconstitutionality of the statutes under which the proceeding was had. The first ground urged is that the offense here involved did not exist at the date of the adoption of the organic law of this State, and, therefore, not being cognizable by a justice at that time, that it falls within the limitation of section 4, Article III, West Virginia Constitution, that "No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury." While the offense here involved did not exist at the date of the adoption of our Constitution, it was later created by statute and has now been made cognizable by a justice, original, concurrent

and appellate jurisdiction being given in all cases arising under the act to juvenile, circuit, intermediate and criminal courts. Section 16c (2), *supra*. The non-support act was first enacted in 1901 (Chapter 13, Acts 1901), and was then (as now) cognizable by a justice. The act was repealed by Chapter 51 of the Acts of 1917, which vested the jurisdiction of the offense in the juvenile, circuit, intermediate and criminal courts. In a case arising during the life of the latter act, this Court held that a trial upon the complaint and warrant charging non-support was not authorized by a justice, but that, as a criminal proceeding, a preliminary examination might be had thereon, and, if proper, the defendant could be held to answer an indictment. *State* v. *Goudy*, 94 W. Va. 542. A like holding in effect was that of *State* v. *Harris*, 88 W. Va. 97. The statute under consideration was evidently enacted by the Legislature to meet these cases by making the offense cognizable by a justice and providing for a trial before him. But is the limitation of the Constitution to be tested, in respect to its scope, by the jurisdiction of justices as it was *at the date* of the adoption of the Constitution? While this question was not directly in issue in the *Goudy* and *Harris* cases, this Court inferentially held adverse to such a proposition. The holdings in those cases were based on the fact that the Legislature had not made the offense cognizable by a justice—thus interpreting the language of the constitutional mandate "not cognizable by a justice" (now sought to be invoked by petitioner) to include, not only those cases cognizable by a justice at the time of the adoption of the Constitution, but also those made cognizable by a justice by subsequent legislative action. To hold to the contrary would defeat in a measure the purpose of the clause in question, as well as that portion of section 28, Article VIII, which confers criminal jurisdiction on justices. The framers of our State Constitution intended it not merely to meet the then existing conditions, but to be broad enough to govern the future as well. 6 R. C. L., "Const. Law," section 3. The powers and duties of a justice of the peace have been very much enlarged by statute since the time of the adoption of the Constitution. While at first confined in narrow limits, they have

grown by necessity to immense proportions under our law. The classes defined by the section of the Constitution under consideration necessarily related to the situation then existing. The Legislature has found it expedient to make many acts crimes which were not so at the time of the adoption of our Constitution. Surely it was never intended to exclude these latter offenses, which by legislative power were vested in the justice of the peace to try and determine. Hence, the limitations put upon the Legislature in making offenses cognizable by a justice would only extend to instances where the law-making body endeavors by enactment of laws to give justices power to try offenses falling within the purview of those of treason, felony or other crime of like nature. The offense here does not fall within such limitation.

The next objection to the constitutionality of the statute is that it vests in the justice powers of a court of equity. This same question was raised in *Fisher* v. *Sommerville,* 83 W. Va. 160. We there held that the Legislature is not inhibited by anything in the Constitution from extending the powers and jurisdiction of the law courts to subjects of equity cognizance. The primary purpose of the statute under review is coercion of provision for support of deserted wives and children by those upon whom the law places the burden of their support, when they, being able to provide, refuse to do so. While jurisdiction for such purpose has been held and exercised for centuries by courts of equity, the Legislature has sought to achieve more effectively the object, by the passage of the act in question. As aptly stated by this Court in the *Fisher* case, *supra:* "It gives a summary and cumulative remedy and a harsher one than that afforded by the equity courts and to restrain and, if possible, suppress the evil of dereliction of marital and parental duty, as well as to provide a more efficacious means of enforcing performance of such duties, it has made wilful neglect thereof criminal." We find nothing in the Constitution either expressly or impliedly withholding the power from the Legislature to make such extension. In the latter case was involved the question of allowance to the complainant *pendente lite* of a sum for maintenance and support. The amended statute now under re-

view makes such allowance in the nature of a penalty for the offense committed. It is not, therefore, open to so grave objection as was the case under the former statute. This Court found no constitutional defect in the statute as then constituted; less reason exists for a different holding as to the statute now existent.

The other points argued by the complainant in his able brief are not properly before us for determination.

Perceiving no constitutional infirmity in the statute, as urged by the petitioner, we decline to award the writ prayed for.

*Writ refused.*